**THE FLORIDA PHARMACY ASSOCIATION, et al.,**
Plaintiffs,

v.

**Douglas M. COOK, et al., Defendants.**

No. 4:97CV322–RH.

United States District Court,
N.D. Florida,
Tallahassee Division.

Sept. 4, 1998.

Christopher Brian Lunny, Alan Harrison Brents, Daniel Cramer Brown, Katz Kutter Haigler Etc, Tallahassee, FL, for the Florida Pharmacy Association, John B. Williams, William C. Napier, and Randall McElhenny, plaintiffs.

Steven Alfons Grigas, Gordon Beveridge Scott, Health Care Administration, State of Florida, Tallahassee, FL, for Douglas Cook, Jerry Wells, and Richard Lutz, defendants.

## MEMORANDUM OPINION

HINKLE, District Judge.

In this action three individual pharmacists and the Florida Pharmacy Association challenge the State of Florida's proposed implementation of a variable fee schedule for medicaid reimbursements to pharmacies. Plaintiffs allege that implementation of the variable fee schedule will violate federal law. The matter has been tried to the court. .

For the reasons that follow, I conclude that, with one possible exception, the provisions of federal law on which plaintiffs rely do not create privately enforceable rights and thus do not afford a basis for relief in this action. I conclude further that the one possible exception—that is, the one provision of federal law that may create a privately enforceable right—affords plaintiffs no right to relief because they have failed to prove a violation of that provision. I thus direct the clerk to enter judgment for the defendants.

## I. BACKGROUND

■ The medicaid program is the nation's primary effort to provide medical care for indigent and certain other needy patients. As the Eleventh Circuit has described the program,

> Medicaid is a cooperative venture of the state and federal governments. A state which chooses to participate in Medicaid submits a state plan for the funding of medical services for the needy which is approved by the federal government. The federal government then subsidizes a certain portion of the financial obligations which the state has agreed to bear. *A state participating in Medicaid must comply with the applicable statute*, Title XIX of the Social Security Act of 1965, as amended, 42 U.S.C. § 1396, *et seq., and the applicable regulations.*

*Harris v. James,* 127 F.3d 993, 996 (11th Cir.1997) (emphasis added), *quoting Silver v. Baggiano,* 804 F.2d 1211, 1215 (11th Cir. 1986). In short, each participating state may structure its own medicaid program as it sees fit, but only within the parameters established by the applicable federal statutes and regulations.

The State of Florida participates in the medicaid program. As part of the program, the state makes payments to hospitals, doctors, pharmacies and other health care providers for providing covered services to medicaid patients. The covered services include prescription drugs.

Pharmacies may choose whether or not to participate in the medicaid program. Pharmacies that participate receive payments from the state for providing prescription drugs to medicaid patients. The payments

consist of both an ingredient fee and a dispensing fee. The ingredient fee is the wholesale acquisition cost of the drug at issue plus seven percent. Since 1986, the dispensing fee has been a flat rate of $4.23 per prescription, without variation.

In 1997, the Florida Legislature enacted a provision that "directed" the Florida Agency for Health Care Administration ("AHCA"), the state agency that administers the medicaid program, "to implement a variable dispensing fee for payments for prescribed medicines while ensuring continued access for Medicaid recipients." Ch. 97–260, Laws of Florida (1997). The provision said further, "The variable dispensing fee may be based upon, but not limited to, either or both the volume of prescriptions dispensed by a specific pharmacy provider and the volume of prescriptions dispensed to an individual recipient." *Id.* The Legislature reduced the medicaid budget by $4.38 million based on the projected savings from implementing the variable fee.

AHCA determined to implement the legislative directive by adopting a variable fee based on the volume of prescriptions dispensed to an individual recipient, not based on the volume of prescriptions filled by a specific pharmacy. AHCA determined to leave the existing $4.23 dispensing fee unchanged for the first eight prescriptions filled for a medicaid recipient in any month but to reduce the fee to $3.23 for the ninth and each subsequent prescription filled for the recipient during the month. Under AHCA's proposal, the reduced fee would apply to the ninth and each subsequent prescription filled for the particular patient regardless of whether the patient had the prescription filled by the same pharmacy that filled the

first eight prescriptions or by an entirely different pharmacy.

## II. PLAINTIFFS' CLAIMS

Upon learning of AHCA's decision, plaintiffs[1] brought this action against defendant state officials,[2] asserting that implementation of the proposed variable fee would violate federal law in six respects. First, plaintiffs assert the state failed to consider whether the fee is "consistent with efficiency, economy, and quality of care," and whether the fee is "sufficient to enlist enough providers" to assure access to care for medicaid patients at least to the same extent as care is available to the general population in the geographic area, all as allegedly required by 42 U.S.C. § 1396a(a)(30)(A). Second, plaintiffs assert that, whatever the state did or did not consider, the proposed fee is in fact inconsistent with "efficiency, economy, and quality of care," and thus violates 42 U.S.C. § 1396a(a)(30)(A). Third, plaintiffs assert that, whatever the state did or did not consider, the proposed fee is in fact insufficient to enlist enough providers to assure access to care for medicaid patients at least to the same extent as care is available to the general population in the geographic area, and thus violates 42 U.S.C. § 1396a(a)(30)(A). Fourth, plaintiffs assert the state failed to give public notice of the proposed change as allegedly required by 42 C.F.R. § 447.205. Fifth, plaintiffs assert the state failed to obtain advance federal approval of the proposed change as allegedly required under 42 C.F.R. § 430.12(c)(1)(ii). And sixth, plaintiffs assert the state failed to have in place a Medical Care Advisory Committee and thus failed to give such a committee an opportunity for participation in development of the variable fee policy, as allegedly required by 42 C.F.R. § 431.12(b) and (e).[3]

---

1. Plaintiff Florida Pharmacy Association is a not-for-profit corporation that represents some 1700 Florida pharmacists, most of whom participate in the medicaid program. Defendants do not challenge the Association's standing to assert the rights of its members. Plaintiffs John B. Williams, William C. Napier and Randall McElhenny are pharmacists who provide services to medicaid patients. Mr. McElhenny owns his own pharmacy, which is a medicaid provider.

2. Defendants are Douglas M. Cook, the director of AHCA, and two state medicaid officials, all in their official capacities. This action is properly maintained against these officials under *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).

3. In their complaint, plaintiffs articulated their position in five counts. In order to facilitate the substantive analysis, I have subdivided their positions into a total of six claims (splitting plaintiffs' count II into the second and third claims listed

## III. THE STARTING POINT: IDENTIFYING FEDERAL RIGHTS

■ Plaintiffs seek redress in this action under 42 U.S.C. § 1983. That statute provides an injured party a cause of action against any person acting under color of state law for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." In 1980, the Supreme Court held that § 1983 extends to "purely statutory" violations of federal law, not just constitutional violations and not just violations of the civil rights statutes. *Maine v. Thiboutot*, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980) (holding that parties may enforce under § 1983 rights created by Social Security Act). A "right" created by the medicaid statute thus is enforceable against state officials in a private action brought by an injured party under § 1983.[4]

■ This does not mean, however, that an injured party always may enforce under § 1983 whatever provisions of federal law suit his or her purposes. In a series of more recent cases, the Supreme Court has adopted a three-prong test for determining whether any particular provision of federal law creates a federal "right" that may be enforced in a private action brought under § 1983. *See Wright v. City of Roanoke Redevelopment & Hous. Auth.*, 479 U.S. 418, 423, 107 S.Ct. 766, 93 L.Ed.2d 781 (1987); *Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 110 S.Ct. 444, 107 L.Ed.2d 420 (1989); *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990); *Suter v. Artist M.*, 503 U.S. 347, 112 S.Ct. 1360, 118 L.Ed.2d 1 (1992); *Blessing v. Freestone*, 520 U.S. 329, 117 S.Ct. 1353, 1359, 137 L.Ed.2d 569 (1997).[5] A party who is injured by an alleged violation of the medicaid statutes or regulations but who has no federal "right" within the meaning of these cases cannot secure redress in federal court in an action under § 1983. Nor can such a party secure relief in federal court on any other basis.

As definitively articulated by the Eleventh Circuit, this three-prong test for determining whether a plaintiff has a federal "right" under a medicaid provision consists of three questions:

(1) is the provision intended to benefit the plaintiff; (2) does the provision impose a binding obligation on the governmental unit; (3) is the interest "too vague and amorphous" for judicial enforcement?

*Harris v. James*, 127 F.3d 993, 999 n. 7 (11th Cir.1997); *see also Doe v. Chiles*, 136 F.3d 709, 713 (11th Cir.1998).

■ Thus a plaintiff who asserts he or she has been or is being injured by a state official's alleged violation of federal medicaid requirements may secure redress in federal court only if he or she establishes that (1) the federal requirement at issue is intended to benefit the plaintiff, (2) the federal requirement imposes a binding obligation on the state government, *and* (3) the federal requirement is not "too vague and amorphous" for judicial enforcement. A plaintiff who fails to meet any of these three requirements cannot prevail.

■ In addition, in order to prevail, a plaintiff must trace the alleged federal requirement on which he or she relies to a federal *statutory* provision, not merely to a regulation. Under the law of this circuit, rights enforceable under § 1983 are rights created by Congress (or by the Constitution); if the statute at issue creates no enforceable rights under the three-prong test, then regulations adopted under the statute also create

above and renumbering the remaining claims accordingly).

4. Although § 1983 refers to "rights, privileges or immunities," the applicable Supreme Court and Eleventh Circuit decisions generally speak of "rights." In the case at bar, there is no claim that plaintiffs have any "privileges" or "immunities" over and above any "rights" they may have.

For ease of reference this opinion refers only to "rights."

5. For a description of the facts and holdings of these cases, see *Harris v. James*, 127 F.3d 993 (11th Cir.1997). No purpose would be served by repeating that description here.

no rights enforceable under § 1983. *Harris v. James,* 127 F.3d 993, 1009 (11th Cir.1997). If a statute does create enforceable rights, however, regulations validly adopted under the statute may further define those enforceable rights. *Id.*

Applying these standards, I conclude that plaintiffs' first, second, fourth, fifth and sixth claims, as listed above, are not based on enforceable "rights." I conclude that plaintiffs' third claim may be based on an enforceable "right" but that plaintiffs have failed to establish a violation of that right. I discuss each of the claims in turn.

## IV. THE STATE'S ALLEGED FAILURE TO CONSIDER THE STATUTORY CRITERIA

■ Federal law leaves to the states the task of determining the methodology by which providers of services to medicaid beneficiaries will be paid, and how much they will be paid, subject to the requirement that states

> assure that payments are consistent with efficiency, economy, and quality of care and are sufficient to enlist enough providers so that care and services are available under the plan at least to the extent that such care and services are available to the general population in the geographic area.

42 U.S.C. § 1396a(a)(30)(A).

Plaintiffs' first claim is that in adopting the variable fee, the state failed to consider efficiency, economy and quality of care and the effect of the proposed variable fee on the availability of services. The claim attacks both the Florida Legislature, which adopted chapter 97–260 requiring implementation of a variable fee, and AHCA, which determined the structure and amount of the proposed variable fee.

For three separate and distinct reasons, plaintiffs cannot prevail on this claim. First,

§ 1396a(a)(30)(A) does not require the state to "consider" anything; it requires the state to achieve a result. Second, even if § 1396a(a)(30)(A) could be read to impose a separate requirement that the state "consider" the statutory factors in some manner, this would not create in plaintiffs a "right" enforceable in federal court. Third, even if plaintiffs had a right to have the state "consider" the statutory factors, plaintiffs have not shown that either the Legislature or AHCA failed to do so.

### A. *The Scope of § 1396a(a)(30)(A)*

■ By its plain terms, § 1396a(a)(30)(A) requires each state to "assure" that medicaid payments are "consistent with efficiency, economy, and quality of care" and "sufficient" to enlist enough providers so that care and services are as available to medicaid patients as to the general population in the geographic area. Thus the state clearly must adopt a payment structure and payment rates that will achieve these results. The section says nothing, however, about what the state must consider or how it must go about determining its payment structure and rates. Thus, at least so far as § 1396a(a)(30)(A) is concerned, the state ordinarily can be as deliberative or as nonchalant as it chooses, so long as it selects a payment structure and rates that *in fact* are "consistent with efficiency, economy, and quality of care" and "sufficient" to enlist enough providers so that care and services are as available to medicaid patients as to the general population in the geographic area.[6]

■ This conclusion draws full support from *Methodist Hospitals, Inc. v. Sullivan,* 91 F.3d 1026 (7th Cir.1996), in which the court concluded that § 1396a(a)(30) "requires each state to produce a *result,* not to employ any particular methodology for getting there." *Id.* at 1030 (emphasis added). I reject plaintiffs' assertion that § 1396a(a)(30)

---

**6.** This does not mean, of course, that a state's nonchalance or failure fully to study the issues could not have evidentiary value on any substantive challenge to the state's decisions. Nor does the absence of a federal statutory provision on this mean there is no applicable state requirement, as, for example, under the Florida Administrative Procedure Act. My holding is simply that there is no separate procedural requirement imposed by 42 U.S.C. § 1396a(a)(30)(A).

requires the state to conduct a detailed cost study or to rely on such a study by others, and I thus decline to follow *Orthopaedic Hospital v. Belshe,* 103 F.3d 1491 (9th Cir.1997), in this respect.

## B. Absence of a Federal Right

■ In any event, even if § 1396a(a)(30)(A) required a state to "consider" the statutory criteria in advance or to employ any particular methodology in determining its payment structure and rates, this would not create a federal "right" that a provider could enforce in federal court. Under the first prong of the Supreme Court's three-prong test, a "right" may arise only under a provision intended to benefit the plaintiff. A definitive requirement that a state employ a particular payment methodology or establish rates that are sufficient to meet specified criteria may be intended to benefit providers, but a mere requirement that a state "consider" various factors in an undefined way is ordinarily a general programmatic requirement that governs administration of the program and is *not* intended to benefit providers within the meaning of the three-prong test.

This conclusion is consistent with *Suter v. Artist M.,* 503 U.S. 347, 112 S.Ct. 1360, 118 L.Ed.2d 1 (1992). There the court held that the Adoption Assistance and Child Welfare Act's requirement that states adopt plans providing for the use in each case of "reasonable efforts" to prevent the removal of a child from the home does not create "rights" enforceable under § 1983. Like a requirement that a state use "reasonable efforts," a requirement that a state "consider" various factors does not create an enforceable "right" in the person who might (or might not) benefit from those efforts or from that consideration.[7]

*Doe v. Chiles,* 136 F.3d 709 (11th Cir.1998), is not to the contrary. That case addressed a medicaid act provision requiring the state to provide assistance to developmentally disabled individuals with "reasonable promptness." The prompt provision of assistance (as at issue in *Doe*) in and of itself provides an important benefit to the recipients. The consideration of factors in formulating a payment methodology (as at issue here), in contrast, does not in and of itself provide any benefit to providers; any benefit to providers is, instead, at least one major step further removed from the consideration of factors.

## C. The State's Consideration of the Statutory Criteria

■ Even if § 1396a(a)(30)(A) created an enforceable right to have the Legislature and AHCA "consider" the statutory criteria, plaintiffs would be unable to prevail on their claim, because they have failed to establish that either the Legislature or AHCA failed to consider the statutory requirements.

Plaintiffs say that in adopting the variable fee statute, the Florida Legislature considered only the budget. The legislators no doubt considered the budget, as they had every right to do. This does not mean, however, that the legislators did not also consider other matters, including the statutory requirements. The Legislature explicitly directed AHCA "to implement a variable fee for payments for prescribed medicines *while ensuring continued access for Medicaid recipients,*" ch. 97–260, Laws of Florida (1997) (emphasis added); this makes clear that, at the least, the Legislature considered one of the statutory requirements: access to services.

Plaintiffs also assert that, whatever the *Legislature* considered, *AHCA* failed to consider the federally mandated criteria in implementing the Florida Legislature's determination. This they have not proved.

The federal statutory requirements—that payments must be "consistent with efficiency,

---

7. In response to *Suter,* Congress adopted 42 U.S.C. § 1320a–2, making clear that a provision of the Social Security Act cannot be deemed not to create an enforceable "right" merely because the provision is included in a section of the Act requiring a state to adopt a plan. As noted in *Harris v. James,* 127 F.3d 993, 1000–03 (11th Cir.1997), in all other respects *Suter* remains good law.

economy, and quality of care" and "sufficient" to enlist enough providers so that care and services are as available to medicaid patients as to the general population in the geographic area—are broad and general provisions likely to garner virtually universal support. As a matter of plain common sense, anyone adopting a fee structure would be likely to consider these factors, at least to some extent; there would be no reason not to do so. A reasonable inference is that AHCA considered the statutory criteria at least at some level in determining its proposed variable fee.[8]

In sum, plaintiffs' first claim, that the state failed to consider the statutory criteria, is unfounded.

## V. THE ALLEGED FAILURE TO PROVIDE PAYMENTS "CONSISTENT WITH EFFICIENCY, ECONOMY, AND QUALITY OF CARE"

Plaintiffs' second claim is that, whatever the state did or did not consider, the proposed variable fee is in fact inconsistent with "efficiency, economy, and quality of care" and thus violates 42 U.S.C. § 1396a(a)(30)(A).

■ Under the first and third prongs of the Supreme Court's three-prong test, plaintiffs have no enforceable "right" under this provision of the statute.

First, the requirement for "efficiency, economy and quality of care" is not intended to benefit pharmacies. "Efficiency" and "economy" are goals of the program as a whole designed primarily to benefit the federal and state governments who fund the

program and the taxpayers who ultimately bear the financial burden.[9] "Quality of care" is a goal intended primarily to benefit patients. These goals are important to providers, but they are not intended to benefit providers within the meaning of the three-prong test.

In addition, the requirement that payments be consistent with "efficiency, economy, and quality of care" is "too vague and amorphous" for judicial enforcement and thus fails the third prong of the Supreme Court's test. The statute provides no benchmark or guidance for determining whether any particular approach is "efficient," no standard for addressing "economy," no suggestion of how much "quality" is enough. These are goals for which the state must strive, but they are not standards a court can enforce.

In this respect this case is unlike *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498, 110 S.Ct. 2510, 110 L.Ed.2d 455 (1990). The statute at issue there addressed medicaid payments to hospitals and certain other facilities. The statute required the states to have a plan for payments

> which the State finds, and makes assurances satisfactory to the Secretary, are reasonable and adequate *to meet the costs which must be incurred* by efficiently and economically operated facilities in order to provide care . . . .

496 U.S. at 503, 110 S.Ct. 2510 (emphasis added), *quoting* 42 U.S.C. § 1396a(a)(13)(A) (1982 ed., Supp. V). Courts can determine whether rates are reasonable and adequate "to meet the costs which must be incurred"

---

**8.** To be sure, plaintiffs presented proof that AHCA officials "negotiated" with legislators concerning how to implement the legislative mandate. In making its decisions, AHCA thus undoubtedly considered such things as the views of legislators. Nothing in § 1396a(a)(30)(A), however, makes this improper. Even if § 1396a(a)(30)(A) were read to require the consideration of the statutory criteria, the statute most assuredly does *not* make those criteria exclusive; state regulators are certainly free to consider additional factors, including the views of other state officials, without violating federal law.

**9.** "Efficiency" undoubtedly also benefits the providers who submit claims and participate in the process by which they are adjusted. But that is not the primary focus of the requirement for "efficiency," and even in this respect the primary intent of the "efficiency" requirement is to benefit the program as a whole and the governmental units and taxpayers who fund it, not to benefit providers.

by efficiently and economically operated facilities, because the statute provides a standard—meeting costs—by which reasonableness and adequacy can be measured. The statute at issue in the case at bar, in contrast, provides no such guidance, simply mandating that payments be consistent with "efficiency, economy, and quality of care," without tying those requirements to costs or any other standard. Moreover, the statute at issue here speaks to efficiency and economy in the medicaid program generally, not just in individual facilities. A general and undefined requirement of efficiency and economy in the medicaid program as a whole is a concept for policy makers, not for courts.

In sum, the requirement that payments be consistent with "efficiency, economy, and quality of care" creates no enforceable "right," and plaintiffs therefore cannot prevail on this claim.

## VI. THE ALLEGED FAILURE TO PROVIDE PAYMENTS "SUFFICIENT TO ENLIST ENOUGH PROVIDERS" TO ASSURE EQUAL ACCESS

Plaintiffs' third claim is that, whatever the state did or did not consider, the proposed variable fee violates the state's statutory duty to

> assure that payments . . . are sufficient to enlist enough providers so that care and services are available under the plan at least to the extent that such care and services are available to the general population in the geographic area.

42 U.S.C. § 1396a(a)(30)(A). It is at least arguable that, unlike the other provisions on

which plaintiffs rely, this portion of the statute *does* afford plaintiffs an enforceable right.[10]

Plaintiffs' claim founders, however, on the facts. The individual plaintiffs themselves have acknowledged that the proposed variable fee will not drive them off the medicaid network. They will continue as medicaid participants and will continue to provide care, and will do so just as conscientiously for medicaid patients as for all others, even after implementation of the variable fee. Their evidence suggests that their margins are desperately thin and growing thinner, but the proposed variable fee is not yet the straw that will break the camel's back, at least so far as this record reflects. I find that the proposed variable fee is sufficient to enlist enough providers so that care and services are available to medicaid patients to the same extent as to the general population in the same geographic areas.[11]

## VII. THE STATE'S ALLEGED FAILURE TO GIVE NOTICE

Plaintiffs next assert the state failed to comply with 42 C.F.R. § 447.205, which requires a state to "provide public notice of any significant proposed change in its methods and standards for setting payment rates for services." Plaintiffs cannot prevail on this claim for at least two reasons.

First, the notice requirement arises only from a regulation, not from the statute. Under *Harris v. James,* 127 F.3d 993, 1009 (11th Cir.1997), therefore, plaintiffs have no "right" to enforce this provision under 42

---

10. The provision is most directly intended to benefit medicaid patients, not providers such as plaintiffs. Still, the statute clearly is intended to provide at least a high enough payment to at least some providers to keep them on the network. This is a benefit to those providers and may meet the first prong of the three-prong test. The next two prongs are easily met: the requirement's unequivocal language makes clear it was intended by Congress to be binding on the states, and the provision announces a standard not too imprecise for judicial enforcement.

11. If all patients paid only the proposed medicaid rates, many pharmacies might be unable to continue in business, and the availability of care to medicaid patients (and others) might suffer. This is because medicaid rates cover marginal costs but may not cover total costs. Other patients, however, pay more, and by doing so they cross-subsidize medicaid patients, at least to some extent. Plaintiffs point to no provision of federal law that prohibits this. Whether this is good policy is an issue for the Congress and the Florida Legislature and perhaps for the agencies to which they have delegated authority; this is not an issue for this federal court.

U.S.C. § 1983. This makes it unnecessary to consider whether this requirement otherwise would meet the Supreme Court's three-prong test.

Second, in any event, the state now has given formal public notice of AHCA's proposed rule by publication in the Florida Administrative Weekly. This eliminates any challenge based on insufficient notice of AHCA's proposed implementation of chapter 97–360. And it is unlikely there is any separate requirement for notice before the Florida Legislature adopts a statute as general in nature as that at issue here.

## VIII. THE STATE'S ALLEGED FAILURE TO OBTAIN ADVANCE FEDERAL APPROVAL OF THE PROPOSED CHANGE

■ Plaintiffs next assert that the state failed to obtain advance federal approval of the proposed change in fee structure as allegedly required by 42 C.F.R. § 430.12. For two separate reasons, this claim fails.

First, the source of this alleged requirement is a regulation, not the statute itself, precluding enforcement of the requirement under § 1983. *Harris v. James,* 127 F.3d 993, 1009 (11th Cir.1997).

Second, any requirement that the state give advance notice to federal authorities—a requirement the state vehemently asserts does not exist[12]—clearly would constitute only a general administrative requirement addressing the relationship between federal and state authorities, not a provision intended to benefit health care providers within the meaning of the Supreme Court's three-prong test.

## IX. THE STATE'S FAILURE TO HAVE A MEDICAL CARE ADVISORY COMMITTEE

Plaintiffs next assert that the state failed to have in place a Medical Care Advisory Committee and to allow such a committee an opportunity for input into the proposed variable fee. On this claim plaintiffs are factually correct, as the state apparently admits. Indeed, the state does not have a functioning Medical Care Advisory Committee, even though federal law plainly makes such a committee mandatory.[13]

■ For two reasons, plaintiffs cannot prevail on this claim in this action. First, the requirement that the state have a Medical Care Advisory Committee arises from a regulation, not the statute itself, precluding enforcement of the requirement under § 1983. *Harris v. James,* 127 F.3d 993, 1009 (11th Cir.1997).

Second, the Medical Care Advisory Committee requirement is a general administrative requirement, not a provision intended to benefit health care providers within the meaning of the Supreme Court's three-prong test.

## X. SCOPE OF THE RULING

For these reasons, judgment will be entered in this action in favor of the defendants. This does not mean, however, that there has been a determination that the state's proposed variable fee and the manner in which the state has gone about adopting it comply in all respects with federal law. To the contrary, it is clear that at least in one respect—the failure to have a functioning

---

**12.** The state says it did not obtain advance federal approval because that is not how the program works. Instead, the state says federal approval of changes is routinely sought and obtained *after* a change is implemented. Plaintiffs did not address this alleged requirement in their trial brief.

**13.** Under 42 U.S.C. § 1396a, each state must have a medicaid "plan," and 42 C.F.R. § 431.12(b) provides:

A State plan *must* provide for a medical care advisory committee meeting the requirements

of this section to advise the Medicaid agency director about health and medical care services.

(Emphasis added). The regulations provide further:

The committee *must* have opportunity for participation in policy development and program administration, including furthering the participation of recipient members in the agency program.

42 C.F.R. § 431.12(e) (emphasis added).

Medical Care Advisory Committee—the state has *not* complied with federal law.[14]

Nonetheless, the line of United States Supreme Court and Eleventh Circuit cases discussed above makes clear that federal courts do not have a roving commission to ferret out violations of the medicaid statutes and regulations. Instead, only certain provisions of the medicaid statutes create private "rights" that may be enforced in a private action such as this. Whether the state's procedures and proposed adoption and implementation of a variable fee have violated provisions other than those that may be enforced in a private action such as this, and if so whether there are remedies in other forums, are issues not properly before the court in this action.

The absence of a remedy for any such violations of federal law in an action such as this does not mean, of course, that these provisions of federal law are a dead letter. State legislators and executive branch officials, no less than federal judges, have a solemn duty to comply with federal law. Indeed, they generally take an oath to support and defend the Constitution of the United States; one of the Constitution's provisions is the Supremacy Clause, under which federal law is fully binding on the states and state officials.

There are important limits on federal judicial authority that derive both from the concept of separation of powers among the three branches of the federal government and from the concept of federalism that helps delineate the division between federal and state prerogatives. The concept of privately enforceable "rights" that is addressed in the line of cases discussed above responds in part to these notions of separation of powers and federalism. What those cases (and this decision applying those cases) do *not* mean is that the states can properly ignore mandatory provisions of federal law.

### Conclusion

For these reasons,

IT IS ORDERED:

The clerk shall enter judgment dismissing plaintiffs' complaint with prejudice and shall close the file.

14. The state asserts the proposed switch to a variable fee is not so significant that the state must submit the matter to a Medical Care Advisory Committee. I make no ruling on this issue but note that, whether or not the state was required to submit the variable fee proposal to a Medical Care Advisory Committee, the state most assuredly was and is required to have such a Committee in place.